# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

————————————————

No. 1D2022-1106

————————————————

TERESA MOON-VILENO, an
individual, and DEBORAH LYNN
FELTY, an individual,

    Appellants,

    v.

FLORIDA ASSOCIATION OF COURT
CLERKS, INC., a Florida not for
profit corporation, FACC
SERVICES GROUP, L.L.C. d/b/a
CIVITEK, a Florida Limited
Liability Company, and CIVITEK
NATIONAL, INC., a Florida profit
Corporation,

    Appellees.

————————————————

On appeal from the Circuit Court for Leon County.
J. Layne Smith, Judge.


January 24, 2024


B.L. THOMAS, J.

Appellants filed a class action complaint seeking a declaratory judgment that Appellees violated section 215.322(5), Florida Statutes.

The complaint asserted that Appellees collected a convenience fee in excess of the amount needed to pay the lawful service fee charges for credit card processing services used in collecting payments to court clerks.* The lower court granted summary judgment in favor of Appellees, finding that section 215.322(5) did not apply to private entities. The lower court also found that even if section 215.322(5) did apply, Appellants had no standing to enforce the statute because the Legislature did not create a private right of action.

Appellee Florida Association of Court Clerks, Inc. ("FACC"), is a private corporate association with its membership composed of the Florida Court Clerks. FACC created Appellee FACC Services Group, LLC, d/b/a Civitek ("FACC Services") as a wholly-owned subsidiary in order to provide technical services to state agencies in Florida and other states. Among these services is processing for credit card payments made to court clerks for court filing fees, fines, and other payments.

Section 215.322(2), Florida Statutes, authorizes a "state agency" to accept credit cards:

A state agency as defined in s. 216.011, or the judicial branch, may accept credit cards, charge cards, debit cards, or electronic funds transfers in payment for goods and services with the prior approval of the Chief Financial Officer. If the Internet or other related electronic methods are to be used as the collection medium, the state chief information officer shall review and recommend to the Chief Financial Officer whether to

---

* The complaint also included counts seeking findings of unlawful restraint of trade, unjust enrichment, and a declaratory judgment that Appellees violated section 112.311, Florida Statutes, by unlawfully using public office for private gain and not holding public positions for the benefit of the public. The trial court entered summary judgment in favor of Appellees on all counts. Appellants did not seek review of the trial court's order as to these other counts.

approve the request with regard to the process or procedure to be used.

Section 215.322(3)(b) provides that the Chief Financial Officer shall adopt rules concerning the acceptance of credit cards, including

> [p]rocedures that permit an agency or officer accepting payment by credit card, charge card, debit card, or electronic funds transfer to impose a convenience fee upon the person making the payment. However, *the total amount of such convenience fees may not exceed the total cost to the state agency*.

(emphasis added).

Section 215.322(5), Florida Statutes, provides:

> *A unit of local government, including* a municipality, special district, or board of county commissioners or other governing body of a county, a consolidated or metropolitan government, and *any clerk of the circuit court*, sheriff, property appraiser, tax collector, or supervisor of elections, *is authorized* to accept payment by use of credit cards, charge cards, bank debit cards, and electronic funds transfers for financial obligations that are owing to such unit of local government and *to surcharge the person who uses a credit card*, charge card, bank debit card, or electronic funds transfer in payment of taxes, license fees, tuition, fines, civil penalties, court-ordered payments, or court costs, or other statutorily prescribed revenues *an amount sufficient to pay the service fee charges by the financial institution, vending service company, or credit card company for such services*. A unit of local government shall verify both the validity of any credit card, charge card, bank debit card, or electronic funds transfer used pursuant to this subsection and the existence of appropriate credit with respect to the person using the card or transfer. The unit of local government does not incur any liability as a result of such verification or any subsequent action taken.

(emphasis added). Section 216.011(1)(ww), Florida Statutes, defines a "state agency" as

> any official, officer, commission, board, authority, council, committee, or department of the executive branch of state government. For purposes of this chapter and chapter 215, "state agency" or "agency" includes, but is not limited to, state attorneys, public defenders, criminal conflict and civil regional counsel, capital collateral regional counsel, the Justice Administrative Commission, the Florida Housing Finance Corporation, and the Florida Public Service Commission. Solely for the purposes of implementing s. 19(h), Art. III of the State Constitution, the terms "state agency" or "agency" include the judicial branch.

There is no dispute that FACC is generating a profit from credit card processing fees. Appellants assert that the vast majority of Florida clerks use FACC Services to process credit card payments for government services. Appellants also assert that FACC Services is the only payment processor in counties that use FACC Services. In these Florida counties, Appellants contend, FACC Services typically collects an inflated convenience fee for credit card processing of 3.5% of the amount charged, whereas the industry standard convenience fee is 2.5%. Thus, for example, in almost every credit card payment of a traffic ticket, court filing fee, or child support payment in this state, Appellants contend FACC is receiving a 1% profit from the payor. Appellants claim that the FACC has never sought requests for proposals to provide credit card processing services from any other credit card payment processor.

The FACC has also formed a separate wholly owned, for-profit entity called Civitek National that subcontracts with FACC Services to provide payment processing services to non-Florida jurisdictions. Civitek National charges a 2.5% convenience fee.

Appellants contend that 25% to 30% of FACC Services' business consists of credit card processing. For just the website www.myfloridacounty.com, which is owned and operated by FACC Services, Appellees earned a total of $8.4 million for convenience fees and similar charges. Profits are transferred from FACC

4

Services to FACC in the form of dividends. For the fiscal year ending in June 2019, FACC Services and Civitek National transferred $2.9 million to FACC. In the fiscal year ending in June 2020, FACC's assets totaled $24 million with $19.3 million in equity, and it earned $3.4 million in revenue from the e-filing authority convenience fees.

Appellants assert that FACC uses its profits to cover various activities that it could not subsidize if it relied solely on its annual dues totaling around $136,000. For example, FACC uses the dividends for continuing education and to subsidize three annual conventions that it holds for its members. FACC also uses profits from FACC Services to pay for lobbying services and a public affairs team. In the fiscal year ending in 2020, FACC used profits from FACC Services to pay $270,000 for lobbying services and between $400,000 and $500,000 for "public affairs," according to Appellants.

Appellants' argument that Appellees are violating section 215.322(5), Florida Statutes, invokes the long-standing legal principle that public officials cannot do indirectly what the law prohibits them from doing directly. *See Cummings v. Missouri*, 71 U.S. 277, 288 (1866) ("[W]hat cannot be done directly cannot be done indirectly."); *State ex rel. Powell v. Leon Cnty.*, 182 So. 639, 642 (Fla. 1938) ("It is fundamental and elementary that the legislature may not do that by indirect action which it is prohibited by the Constitution to do by direct action."); *Green v. Galvin*, 114 So. 2d 187, 189 (Fla. 1st DCA 1959) ("Certainly a public official cannot do indirectly that which he is prohibited from doing directly.").

While Appellants have made a strong case that Appellees have violated section 215.322(5), we cannot reach the merits of this case because under Article V of the Florida Constitution, there is no justiciable controversy, as there is no private cause of action. *See May v. Holley*, 59 So. 2d 636, 639 (Fla. 1952) ("Before any proceeding for declaratory relief should be entertained it should be clearly made to appear . . . that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity."); *MacNeil v. Crestview Hosp. Corp.*, 292 So. 3d 840, 843 (Fla. 1st DCA 2020) (providing that, to state a

5

cause of action for declaratory judgment, a plaintiff must show "a justiciable question as to the existence or nonexistence of some right, status, immunity, power or privilege, or as to some fact upon which existence of such a claim may depend" (quoting *Ribaya v. Bd. of Trs. of the City Pension Fund for Firefighters & Police Officers in the City of Tampa*, 162 So. 3d 348, 352 (Fla. 2d DCA 2015))). The Legislature has not provided a cause of action in the statute to afford Appellants a judicial remedy in this case.

At oral argument, Appellants contended that they sought monetary damages as "supplemental relief," which allowed them to seek declaratory judgment. Section 86.011(2), Florida Statutes, explicitly states, "Any person seeking a declaratory judgment may *also* demand additional, alternative, coercive, subsequent, or supplemental relief in the same action." (emphasis added). We agree with Appellees that section 86.011 does not authorize a party to seek as supplemental relief a remedy that it could not otherwise obtain, where the Legislature declined to provide a private cause of action. *Cf. Y Person v. X Corp.*, 606 So. 2d 1219, 1220 (Fla. 2d DCA 1992) (explaining that any entitlement to supplemental relief arises from and depends upon the declaratory judgment action).

AFFIRMED.

RAY and M.K. THOMAS, JJ., concur.

―――――――――――――

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

―――――――――――――

Debra L. Rosenbluth, Debra Rosenbluth Law, PLLC, Winter Park; Jeffrey M. Liggio, Jason Cornell, Liggio & Cornell, P.A., West Palm Beach; Philip M. Burlington, Adam Richardson, Burlington & Rockenbach, P.A., West Palm Beach, for Appellants.

Barry Richard, Greenberg Traurig, P.A., Tallahassee, for Appellees.